Then we'll hear argument in No. 204094, United States v. Dowdell. Mr. Robertson, we have you back. Thank you, Your Honors. Thank you very much. Mr. Dossage, you're set. You've made the trip to the front again. Good exercise with that briefcase. Yes. All right, Mr. Robertson, please proceed. Thank you, Your Honors. May it please the Court, and we have compliments to Mr. Dossage. My name is Tom Robertson, and I am representing Zephaniah Dowdell. Ms. Dowdell is currently in the custody of the Bureau of Prisons in the state of Minnesota. The reason I am here today on behalf of Zephaniah Dowdell is that Ms. Dowdell was improperly sentenced on her violations of supervised release. Ms. Dowdell was sentenced to a term of incarceration well above the stated range in the policy statements, and this happened on the wings of a violation that was not admitted to by Ms. Dowdell nor proven by any standard. I began representing Ms. Dowdell in March of 2012. Excuse me, Mr. Robertson, there was more than one violation. We're talking about several violations here, including two trips outside of the jurisdiction without permission.  That is true, Judge. Yes, and we're also talking about, I mean, I'm looking for my list of violations, but there were several different violations, some of which on like eight different occasions, I think. Well, one of them was living with a felon without prior authorization, I believe. Another was the use of a controlled substance. It was a positive test for marijuana that she had, and also I think use of alcohol. Alcohol, yes. Correct me if I'm wrong. And then she was, she wasn't directly involved, but Mr. Thompson was directly involved with possessing drugs with intent to distribute in the same dwelling that she was in, and then she traveled to Boston, Yonkers, and Niagara Falls without permission, apparently. Am I, is that about right? Thank you. To clarify and to make my point, the Boston adventure was not admitted to or proven, but was cited by the judge in his sentencing statement. Well, it wasn't admitted. I can accept the fact that it wasn't admitted, but wasn't the judge able to take that into consideration? He doesn't have to credit your position. Your client doesn't have to admit everything in order to have it count against her. I think that, I think that ordinarily conduct underlying acquitted, dismissed, or unproven charges may be taken account in sentencing by the court. Right. If the government, I'm sorry, did I interrupt something? No, no. All I'm saying is there were things that she, that were undisputed, and then the rest of it, even though maybe not admitted by her, could be taken into account by the judge. Right? I disagree as concerns the narcotics conspiracy and the arrest of her son, which was the impetus and the reason for the above-ranged sentence. And we can end it there. The district court, I'm sorry, the district court gave several different reasons. The point was there's not just a violation. There were numerous violations, including the ones that Judge Walker has laid out, and the two admitted departures from the district. And this came on the heels of her earlier sentence, the dramatic sentence reduction. The district court described in detail what he felt was a breach of trust and why he felt the 24-month sentence was appropriate in these circumstances. And so I had difficulty understanding your argument that there was an inadequate explanation or that this was an abuse of discretion in these circumstances. Could you highlight where exactly you think the district court erred? I will. I will. In 2018, Ms. Dowdell had an informal violation for living with a felon. They eventually became married and continued to live together. In 2020, she began use of smoking marijuana and drinking wine. In March, she appeared before the court. The government took no position on sentencing at the March sentencing hearing, no position, okay? So then the court released her back into the community for eight months, eight months. And this sentencing hearing was scheduled for February of 2021. With the arrest of the son on this narcotics conspiracy charge, which was originally the violation that brought her in, all of a sudden the government now is, even though they said they can't in good faith prove, even by a preponderance of the evidence, even by a preponderance of the evidence, which is the United States v. Watts, the Supreme Court case, the court cannot consider this, okay? So all of a sudden we have the government talking for three minutes about the drug bust and taking up two or three pages of the transcript. She didn't mention leaving the district. That's not what she was requesting the above. Ms. Friedman was requesting the above-range sentence for. No, she was talking about she... Excuse me, but the court relied on her departure from the district twice in imposing the sentence that it imposed, and it explained that fairly clearly. And she admitted those departures. Why was the court wrong to rely on that? Even if the government had come in with a somewhat different theory to begin with, and the reason that this came to the court's attention was a prosecution of her husband and son for drug dealing, that seems to me irrelevant, ultimately, in deciding whether the district court abused its discretion in fashioning this sentence and relying on the repeated violations and the two departures from the district. What was an abuse of discretion about that? Your Honor, thank you. I believe it is seen in the abrupt U-turn. The court had adjourned it of its own volition, had easily granted adjournments not even requested by my office. I did not request a single adjournment. They were made by probation and the court for their own schedule. But all of a sudden, and it was scheduled for February, but all of a sudden, with this new variable that the court could not consider because they couldn't prove it beyond a preponderance of the evidence and it was bad faith, the court now brings it directly in and sentences to this well, well above the guideline or the policy statement range. And I think if you look at the actions, and of course the judge knows the case law and knows how to make a sentencing allocution, but the action is this is based on the takedown, the community takedown of this drug trafficking organization that Ms. Dowdell happened to rub into but was not a part of and actually had no knowledge of. All right. I think we have the argument then. And you have two minutes of rebuttal, Mr. Robertson. We'll hear from Mr. Dosange. Thank you, Your Honors. The district court adequately explained its decision. Mr. Dosange, excuse me, could you lift the microphone up so you're speaking more directly into it? Yes, thank you. Thank you. The district court adequately explained its decision to impose a 24-month sentence here. And for the reasons provided by the court, that sentence was reasonable. I don't want to take that. What about Mr. Robertson's argument that the words that were spoken don't really explain the sentence that was imposed and what was really going on here was that the court, and the court alluded to this also, was finding the breach of trust, really the fundamental breach of trust, in Ms. Dowdell living with and perhaps participating in, but unproven, continued drug dealing carried on by her now husband and her son. Based on the chronology that Mr. Robertson laid out, isn't that a reasonable perception about what was going on? I don't think it is, Your Honor. I think if you look at the court's statements, that was one of the reasons it gave. But what it was saying was that over the history of her supervision, there's been repeated violations of the court's trust. This is not just this one instance. So the notion that she's incorrigible, basically. Your Honor, yes. He didn't go so far as to say that, but just said that she just refuses to comply with supervision on numerous occasions. And we spell this out in our brief, this long history of violations. The court did mention the instance where her husband was found in her residence, in their bedroom, with a scale and cracked cocaine and baggies. The material was in his closet, right? In his closet, but in the bedroom they shared. Her son is also storing very large quantities of drugs in the same residence. Now, the government was very clear that we cannot prove that she was involved, and the government took steps to clarify the record because there had been some miscommunication between the, I think, law enforcement and the probation office. Nevertheless, the government said that her denial of knowledge was not credible. The court agreed. Well, there's also a difference in the burden of proof. I mean, you might not have had it beyond a reasonable doubt, but there could be an inference that could raise a probability, and I would think that the district judge could take that into account. Right, Your Honor, and as the court noted earlier, even acquitted conduct can be considered at sentencing. There's no limitation on the type of information that can be considered. I would say, though, that I think what the court was most bothered by was the denial of any knowledge of it. It didn't have to go so far as participation. Right. Also, it fed into his feeling that she couldn't be trusted. Exactly. Given what had happened before where he'd really bent over backwards for her. Exactly. And gave her a big break, but then she continued in her ways. You're right, Your Honor, and I would point out that the adjournments, although maybe not requested directly by defense counsel, in his brief he acknowledges that many of those adjournments after the first set of violations was found to accommodate Ms. Dowdell's medical needs and other reasons. I take it that she was addicted, right? I mean, she had substance abuse problems throughout. Throughout, Your Honor. Yeah, I mean, this is a sad case, but it's definitely a lot of the issue. I'm not saying that's an excuse. I'm just saying that it's part of the background, part of the picture. As well as, Your Honor, I think also that there was just kind of Herculean efforts to try to get her into treatment, to try to give her the opportunity to continue, and she did make improvements at points. It's just that it continued. And I think what really set the court kind of in this path was the travel outside of the district, knowing that that was not allowed. And that was just a further violation. That was not connected to drug dealing. That was just a flouting of the court's authority and a flouting of the court's trust. And this court is, I think I would also add the other factor here is that the court has imposed no further supervised release, and this court has suggested in other cases that are similar that a 24-month sentence without supervised release to follow can be reasonable because that's just, given this record, I think the court was justified to say that there's no more that the court could do to help her rehabilitate. And the best thing to do was to impose a lengthy period of time in prison but no further supervised release. I would also point out that the court was authorized to impose up to a five-year sentence. So if that's the scale, the two-year sentence here, I think, falls easily within bounds of reasonableness. But what was the guidelines range? The guidelines range was 4 to 10 months. But this court has made clear that a court has the ability to go above that. And guidelines range is the wrong terminology. It's a policy range, and those don't carry the same kind of weight as a guidelines range. Unless there's further questions, I won't rely on our arguments in the brief. Thank you very much. Mr. Robertson, you have two minutes of rebuttal. Thank you very much, Your Honors. Just very briefly, from the time of March of 2020 through November of 2020, Ms. Dowdell remained primarily in compliance. She was doing her mental health and her substance abuse. She tested negatively continually. She was doing her satisfying probation department with employment. I would also state again that I believe that the government stated they couldn't prove the narcotics court piece beyond a preponderance of the evidence, and it should not have been at all considered by the court. This is cited in United States v. Aldean as the Supreme Court case of United States v. Watts. I think Aldean is on point because it is a case where the court remanded the case for resentencing and re-explanation where there was conduct that was not properly proven, which was taken into account in the sentencing. Aldean is on point, and the court improperly considered the narcotics piece in this decision. Thank you very much. What about the adversary's point, if I could, that it's not so much that, it's the fact that she denied all knowledge of it. You can know criminal activities going along and not participate in it, but she wouldn't even go that far. I mean, you know, he just questioned her credibility, questioned her ability to be a responsible person under those circumstances. I mean, take that into account, right? Perhaps, but does that jump from leaving Ms. Dowdell out in the community for eight months and pulling up sentencing by four months and then drop? Basically, you're using his lenience and his effort to really give her a chance against him now, against the judge now. You know, it's, you know, this judge bent over backwards for your client in the first instance. In the first instance. You represented her, right? And I think you did a good job at the beginning. Actually, Your Honor, that was another attorney. I just jumped in in March of 2020. Okay. I believe that what I said is that the judge considered the fact of the drug bust, and he shouldn't have. All right. Thank you. We have the arguments and we have your papers.